Good morning, everyone. Welcome to our second session this morning. Again, I thank Judge Simon for joining us from Oregon, and we also thank Judge Thomas, who's joining us from Pasadena today, for this argument. We have one case in this session, No. 23-16-103, Daniel Chung v. County of Santa Clara. Mr. Chung, you're ready. Good morning, Your Honors. May it please the Court, my name is Daniel Chung. I am the appellant in this matter, and I am pro se. Your Honors, there is a world of difference between losing your paycheck for one pay period versus being walked out of your office by three armed investigators. There is a world of difference between losing one paycheck versus having your face plastered on, not one, but two wanted posters and circulated throughout your office. This is the crux of this appeal. And, Mr. Chung, and I totally understand what you've just said, but given our limited time, would you mind going straight to the questions raised in the focus order, please? Yes, Your Honor. So first, with regards to whether this Court can hear the various issues raised by the focus order, the Ninth Circuit General Order 4.2 permits that. There is precedent for the Court to have discretion to consider arguments not raised in the briefs. This is pursuant to Brown v. Ross and Neal Psychiatric Hospital, as well as In re. Riverside Linden Investment Company. If there is good cause shown, the Court can also consider those arguments, as well as if manifest injustice may occur in this particular situation. So I believe, especially given the First Amendment issues at play here and the manifest injustice that would result if these issues were not to be considered properly, I do think the Court has the discretion to consider the arguments at play. And so the argument that I would like the Court to especially focus on is, could I have brought the concerns? I believe Judge Thomas has a question. Yeah, I was going to ask, and maybe this is where you are going, of the questions in the focus order, which are the ones that you think that we should exercise our discretion to review, even though they weren't necessarily raised in the briefs, or which is the most important of those issues for you? So I do think the issue of what causes of action I could have raised in the arbitration was raised in the briefs, and I think that's proper for the Court to consider. I don't think I could have raised the 1983 action in my collective bargaining agreement arbitration. The bargaining agreement only permits you to challenge the just cause for the discipline that's imposed. In the district attorney's office, you can either be warned, suspended, or fired. And so, like a criminal prosecution, the DA's office can bring certain charges or allegations against you, and you're confined to those allegations when appealing that discipline. So if the DA's office decides to impose a discipline of a two-week suspension, that is what you are permitted to challenge through the county charter, as well as the collective bargaining agreement. You are not allowed to just tack on whatever other personal grievances or constitutional claims you may have in a court of law. So I think those issues, because they were precluded for me to raise in the arbitration proceedings, that's one key reason why the Court should not permit the grant of summary judgment that was granted in this case. In the district court, similarly, I would not have been able to give rise to the just cause claim, because there was a contractual agreement between my collective bargaining unit, the GAA, the Government Attorneys Association, as well as the county, saying that if there is a dispute with regards to the level of discipline that is administered, then you must either choose Route A or Route B, Route A being you can go through the personnel board, or Route B, you can pursue private arbitration among the panelists that were given. So with regards to the causes of action that we're looking at and whether these primary rights overlap, I would point to Blackstone's analysis of primary rights. I think that his distinctions among what is a primary right allows us to really consider the different harms that are occurring in this particular case. For example, he talks about how personal security includes the security against reputational harm. He also talks about personal liberty being a different primary right. And finally, he talks about private property being another primary right that is protected under the law. So when we look at the situation, the contractual agreement between the GAA and the county was focused on a property right. Is taking away a one-pay period paycheck permissible? The district court allegations far surpassed just that private property right. So, Mr. Chugg, I guess, do you concede then that the suspension issue, which was arbitrated, would be off the table in terms of the harms that would be available to you under the preclusion doctrine? So I think this would go to the issue of issue preclusion. And I think the case that I cited in my reply brief, the George case, I think elucidates this concept that, yes, there may be certain issues now because of the way the arbitrator ruled on these issues, the jury is now going to hear that. The jury is going to be able to consider the arbitrator's decision, his analysis, what evidence was considered by him, and decide if that issue is precluded or not. The other issues, however — Does the jury decide whether that issue is precluded, or does the district judge decide whether you can even ask the jury for a compensation for the suspension? I guess it could be a mixed question of law and fact. I think the Court would have a threshold issue of determining how preclusive it is. And depending on the Court's analysis of its preclusive effect, then the jury could consider what role this suspension played in the long litany of retaliatory actions that are listed in the second amended complaint, which was the operative complaint before the summary judgment was granted. So I think that this comes — and we really should distinguish between claim preclusion and issue preclusion in this matter because things are getting conflated. On the one hand, District Attorney Rosen is saying he was not a party to this. It was — there was no privity between him and the first arbitration action. However, when it comes to the res judicata claim, now he is trying to rope himself into that cause of action that now he is trying to completely preclude. Could you speak, then, to that separate privity question for purposes of claim preclusion raised in the second question of the focus order? In other words, there seems to be some California law suggesting that in order to have privity on the county's side is that the claims have to be derivative of one another. So could you be precluded by a judgment that the county wasn't liable on your Section 1983 claims because they are derivative? So I think the derivative liability analysis is very interesting because at the crux of it, it's saying that if the liability for the direct tort fees — tort feeser has already been decided and precluded, then you can't go after indirect tort feesers. However, in this particular case, the roles have been reversed. District Attorney Rosen is in the most direct line with me in terms of being the most direct tort feeser. The action that was decided between GAA and the county in the arbitration was between the — the county and the union. So it was an action in which the indirect tort feeser was considered, and so this idea of — of derivative liability is not going to map out completely. And I think another consideration is that when the district court initially dismissed all causes of action against the county, it ruled that they are going to have separate lines of liability because the district court rejected the analysis that District Attorney Rosen is a final policymaker. So if he is not a final policymaker for the sort of conditions required for Monell liability, then the county's liability is also going to derive from a separate strain of actions or inactions. Let me go back to this potential confusion between issue preclusion and claim preclusion. I believe the law is, even in California, that you can have offensive, non-mutual issue preclusion. Number one, I mean, if you disagree with me, feel free to tell me. But if you can, what's the state of the law in California regarding offensive, non-mutual claim preclusion? Is that allowed? So my understanding of California law when it comes to claim preclusion is that it has to involve either the same parties or parties that are in privity. So this idea that you can have claim preclusion by someone who was not a party to the original action or not in privity to the original action is not permitted under California law. That's my understanding of that. And it's DKM and some of the Etinola Park, things like that? Correct. Correct. Okay. And so when we look at the essence of that arbitration proceeding, I think it's really hard to ignore the facts that should be viewed in the light most favorable to me. So, for example, Arbitrator Cohn initially saying, I'm not going to consider any evidence on First Amendment. This is like a judge giving a motion in limine. When a judge makes a definitive, unequivocal ruling like that from the beginning, it's going to affect the entire strategy and presentation of evidence for the parties. But we're dealing with a final order, a judgment of the state court that, under So why isn't that enough under Section 1738 to require preclusive effect? So I think Judge Kerwin's judgment order is actually very important for the court to read carefully and consider. When that confirmation proceeding was occurring between the parties, there was an explicit concession by the county saying this will not have preclusive effect on the reputational damages that are being pursued in district court. And, in fact, Judge Kerwin incorporated that directly into his order, saying Petitioner concedes or Petitioner states that this is not going to have preclusive effect. So this is the type of fast and loose behavior that I have been pointing out in my reply brief as well as my opening brief, which is when the county or district attorney Rosen is in front of the arbitrator, they say Federal court is when you're going to have your day in court. When they're in front of the state court judge who's confirming and reviewing the arbitration award, they say the same thing. They will have their day in Federal court. This limited arbitration decision is not going to have preclusive effect on the reputational damages that are being set. And then, finally, when we come to Federal district court, there is a complete about-face saying he had his day in court in the arbitration, the state court has already confirmed this arbitration award, and, therefore, none of the other issues that he has raised in his second amended complaint should be heard by this district court because it all stems from the same primary right. Mr. Chung, do you want to reserve any time for rebuttal? May I reserve the remainder of my time, please? Of course. Thank you. Thank you. Thank you. Good morning. And may it please the court, Xavier Brand on behalf of the appellee, Jeffrey Rosen. I had some prepared initial remarks, but I take it from the court we'd like to go straight to the questions posed in the court's clarification order? That would be helpful. Thank you. Okay. Wonderful. On the first question and the second question, we agree. I think the answer is yes to both. For the authorities, which we thank the court for putting a finer point on the state court judgment confirming an arbitration award is a judicial proceeding. That's made clear in Caldera. It's entitled Full Faith and Credit under 28 U.S.C. 1738, and it has preclusive effect to the extent it would have in state court. That's the first question. The second question, California law does treat a judgment which confirms an arbitration award as a final judgment on the merits. That was a specific finding by the district court below, and I would point to pages 13, 14, and 20 of the record on that point. And so we agree with those two questions. I think those are relatively straightforward. If I could turn to the third question in the set. This has to do with this notion of derivative liability and privity for purposes of claim construction. At the outset, I must note it's our position this argument has been waived. It was never raised in district court. It was not raised in either the opening or the reply briefs by the appellant. And I think there's good reason to make that finding. I would note that in Levine, it was specifically raised by the plaintiff or the party seeking devoid preclusion. I would point to page 576 of that opinion. In DKN, it was, again, specifically raised. It was explicitly argued, quote, unquote. That's at page 826 of that opinion. And I would even lump in Cal Sierra, another case cited by the court, specifically at page 668 and 673 of that opinion. And so because those were raised directly, the court addressed them. It's not been raised here. I think this Court's precedence makes clear that unless an issue is specifically and distinctly argued or raised below, it may not be considered. And can we correctly decide the preclusion issue under California law without getting to the relationship of the claims, the derivative liability issue? Well, I think the waiver rules would allow the court to do that. But even if we go past those rules, I think there's a few things to note about DKN and Levine. Levine analyzed — well, first of all, I should note that Levine and DKN both describe the fact that many courts had described res judicata as an umbrella term, I think is the word they used. In other words, including both the claim preclusion aspect and the issue preclusion aspect. Right. Well, yeah, I guess let's just think about the claim preclusion aspect here, which is an issue that's raised. Now, whether various arguments or authorities bear on it. But even if we assume that Mr. Chung arbitrated to a final judgment, a Monell claim against the county that failed, why should that preclude a Section 1983 claim against Mr. Rosen? The answer to that, I think, can be derived by the reasoning employed by the court in Levine. In Levine, the trial court had analyzed the issue under collateral estoppel, and the court of appeal reasoned that actually res judicata or claim preclusion was the right way to deal with that issue. And in informing its analysis, the Levine court took a very straightforward, very practical approach, saying the result would be the same under both. And it analyzed the issue under primary rights theory. Now, in that case, both the liability of the party which had arbitrated and the liability of the non-arbitrating party needed to be predicated on an underlying finding of a breach of fiduciary duty. And because in arbitration that duty had been found not to exist and not to have been violated, the court noted in Levine, well, if you go down, then there cannot be derivative liability. I think the words the court used are telling. The court described the issue as follows. And if I could read briefly. Well, first, at page 576 of the opinion, the court articulated that the arbitration award eliminates the basis for a non-arbitrating party's derivative liability. And then it said, still at 579, quote, plaintiff has asserted an invasion of a primary right, and it has been determined that right was not invaded. The OCHI partners did not breach their fiduciary duty, and plaintiff's rightful share of the OCHI profits was not diverted. It would be anomalous to hold Higashi, the defendant in the proceeding below, liable for conspiring to commit a tort or for aiding and abetting its commission where plaintiff has already asserted those rights against the direct tort feeser, the claim was adjudicated, and it was determined plaintiff's rights were not violated. Well, Mr. Brennan, I like Blackstone as much as the next judge, but this is an awfully kind of abstract and indirect way of trying to get at whether Mr. Chung had a fair opportunity to litigate his Section 1983 claim against Mr. Rosen. Why shouldn't we just look at it in those terms, that the arbitrator didn't and couldn't have decided that issue in arbitration or that claim in arbitration? I think it's important to recognize what the arbitrator did do. At the appellant's insistence, the arbitrator adjudicated the issue of whether appellant had First Amendment rights in the speech at issue, the February 14 op-ed, and if so, whether the — his employer was authorized to regulate that speech. Now, over objections and over warnings by the arbitrator of the potential preclusive effect of his findings, the arbitrator made exactly those findings, and he found three things of pertinent note here. One, that in his op-ed, plaintiffs — sorry, appellant spoke as a public — as a public employee rather than a private citizen. Therefore, his speech was not protected. Two, that the content of his speech was not the substantial motivating factor for discipline. And three, even if his speech was protected, there were very good legitimate reasons to regulate this speech, notably the effects of the speech on the operations and justice partner relationships of the DA's office and Rosen specifically. And that was all in the context of whether or not the suspension was appropriate and in the quantity that it was imposed. The arbitrator never addressed whether these alleged other actions taken by DA Rosen were appropriate. The way in which Mr. Chung was allegedly humiliated, the way in which his position was changed, that was never even considered by the arbitrator, correct? Because all the arbitrator had authority to consider was the specific harm of the suspension, of the 10-day suspension. So when did Mr. Chung get his day in court with respect to these other allegations and these other harms? So if we look at paragraphs 37 through 39 and 42 of the operative complaint in Federal courts, and that's at pages 3386 and 3387 of the record, it very clearly jumps from the page — jumps off from the page that Rosen's liability under 1983 is the same as the county's in that both are predicated on the notion that there were free speech rights in the February 14 op-ed, and he was retaliated in various different forms because of that speech. But I thought California law on claim preclusion requires us to look to the specific harms that were done. And for some of these harms, namely the suspension, Mr. Chung had his day in court before the arbitrator. But for the other harms, he didn't because the arbitrator couldn't consider it. Doesn't that require that there be no claim preclusion for those other harms? Respectfully, I disagree. I think the harm analysis comes down to a primary right. And the primary right that was asserted both in Federal court and in the arbitration is whether he had free speech rights and the right to be not retaliated against for those exercise of rights. Okay. Then correct me, and then, you know, educate me on this. To what extent does California law on primary rights also have us look to what are the harms? Because I thought there was a difference. Primary rights vary based upon the specific harms. And I'm hearing you telling me, no, that's not correct. No, I don't mean to give that impression. My understanding of the law and how courts have described this analysis is that the harm comes down to was the primary right that was harmed. And here, the primary right was the right to be free from retaliation against exercise of free speech rights. Now, if we're talking about remedies, I think we're now delving into the other issues. I thought one is a harm of getting your pay doctor, being suspended without pay. Another is a harm of being humiliated in front of your colleagues. A third may be a harm of having your role and position within the office diminished. And all of those are individual and distinct primary rights. Is that not correct? I don't think — I think that's too fine a brush to paint it in. If I could look at — if we look at, for instance, again, the way he's phrased his allegations and his claims in the Federal court, everything, according to him, derives and is causally connected to this one February 14 op-ed. And if we look at how this court analyzed the issue in Caldera, in Caldera, there were 12 episodes alleged of misconduct, but only one episode was litigated in arbitration. And the court — this court found that that episode was the linchpin of the entire claim. And here's the thing, I guess, where I'm getting confused, because I agree that there was one episode here that caused the later response, the op-ed. But then there were at least three distinct alleged harms, suspension without pay, the alleged public humiliation, and the diminishment in office responsibilities, especially done in a quasi-public fashion. And only one of those got litigated before the arbitration. Well, actually, I would disagree with that. The others, too, couldn't be. Well, well, actually, if we look at the arbitration record, not only the suspension, but also the reassignments, were litigated in that arbitration, even though it was beyond the scope, which, again, proves that we're looking at a plenary analysis. But if we're looking at the distinctions academically of issue preclusion versus claim preclusion, I'd like to point out that it's fair to say from the record that everyone involved in district court was analyzing this under the umbrella term analysis. And I would point the Court respectfully to page 62 of the record where Appellant's counsel said, quote, as I understand their motion, they're saying, we're entitled to the benefits of the collateral estoppel and res judicata doctrines, and that's why we should cut you off at federal court, end quote. At page 58 of the record, Appellant argued that the distinction between res judicata and collateral estoppel is, quote, a distinction without a difference, end quote. And it stands to reason that that's why the district court ruled as follows. This is at page 10 of the record. D.A. Roseden brings this motion for summary judgment on the ground that the doctrines of res judicata and collateral estoppel prevent Chung from asserting his Section 1983 claim in this action because the same facts and issues giving rise to the claim have already been litigated and finally determined as part of the administrative agreements procedure in operation, end quote. And so that's really what it comes down to, is that it was undisputed below and here that all of the alleged harms were connected to this one op-ed and whether he had rights in that op-ed such that he could be retaliated against for them. It's now been adjudicated in the final judgment confirmed by the Superior Court that he had no rights in that op-ed. And it could be regulated in any form, in any form of harm. And so that is what derives the ruling below.  I mean, I guess the – can we look at the Pickering balancing test in that way, which tends to look at the situation-specific interests in the workplace and the different sorts of actions that are taken? I mean, why would one Pickering analysis with respect to suspension apply to any other, I guess, I'm trying to find a word other than harms, but the harm side of the balance to the Attorney's Office? So of the Pickering analysis, as the Court's well aware, the first three factors are the appellant's burden to show. And the one I think that's critical here is that, again, in the same speech that is the basis of the claim in arbitration and in federal court, it was found that he spoke as a public employee, that he cloaked himself in the mantle and the gravitas of his elected boss and he tried to add weight to his words through his title. Those findings are undisputed below and they're undisputed here. And so those findings govern the analysis writ large because, again, if there's no rights in the underlying speech, which is the basis of all claimed harms, then there can be no liability. And that's what Levine clearly said. You know, I'm sorry to go back to fundamentals on this, though, but I don't understand the point that he spoke as a public employee because I always thought that the requirements of speaking as a public employee is that you are authorized to speak on behalf of the public agency and that it's part of your job duties. What Mr. Chung arguably did is speak as a private employee but violate the rules of his employment by presenting himself as a public employee. That's what caused the discipline. That's what caused D.A. Rosen to get upset. But that doesn't mean, for First Amendment 1983 purposes, he spoke as a public employee as opposed to a private employee. Am I wrong? I don't think Your Honor is wrong. I think that those are some considerations in looking at the public employee versus private citizen distinction. But there are others. We raised them below, such as this Court's decision in Barone. Barone considered whether, given the circumstances of the speech, someone was cloaking themselves in the mantle of their job. Were they using their title? Were they in uniform? Was it during hours and in a venue that would usually be associated with their workplace? Those considerations were found. But there were specific... I see my time has expired, Mike. You can finish answering the question and then we'll see whether there are any others. Thank you. In those circumstances, the factors that led to that analysis, those were all findings below. The arbitrator found that because he had done the op-ed on work time, using work resources, had used his title in the article, had contacted a reporter he knew only because of his job as a prosecutor, all those things supported the analysis. And so you're correct, Your Honor, there are situations where if it's unauthorized, if it's not within the scope of your regular duties, that could be a factor. Is it a determinative factor? I don't think so. But regardless, that's been litigated here, and that derives the entire claim that he's alleged. Okay. Judge Thomas, do you have any questions? I do have a question, or just really a clarification to go back to a point at the beginning of your argument. So I just want to make sure I understand. So is your position that even if we were to conclude hypothetically that Mr. Rosen is not on privity with the county, that you would still want us to conclude and still believe that we can conclude that the arbitration has a preclusive effect because Mr. Chung waived that privity argument? Is that correct? I just want to make sure. No, Your Honor, I think my argument's twofold. One is I think it's been waived because it's not been raised below or here. In fact, the comments I pointed to earlier by appellant's counsel would suggest that they had a very different understanding. But even if this court reached the analysis, I think there is enough in the record to find that privity. And specifically, I would point to the fact that the allegations in the operative complaint in the Federal case show that for both the county and Rosen, the basis of liability, the kernel of liability, is this assertion that he had free speech rights in the February 14 op-ed. We can also look at, you know, Cal Sierra had a test in which it considered not only the nature of the relationship between the parties, arbitrating and non-arbitrating we can do that here, the court can consider that in the Santa Clara County Ordinance Code, the relationship between Rosen or the district attorney and the county is set out in statute. And if I could just read them very briefly into the record. Section 822-31 says, quote, there is in the county a district attorney's department, hereafter in this chapter referred to as a department, end quote. Section 32 says, quote, there is in the county and in the department the position of district attorney, end quote. And section 33 says, subject to provisions of the charter in this code, the district attorney shall have power to appoint, suspend, or remove all assistants, deputies, clerks, and other employees necessary to conduct the work of the department, end quote. And so I would suggest that the relationship between a county which acts through its board, department heads, and employees is akin to a relationship between a corporation and its employees, one that California courts have found does establish privity and derivative liability. I would also suggest that in Cal Sierra, the court considered whether there was evidence that the non-arbitrating party would consider himself or herself bound by the judgment of the earlier proceeding. And for that, I would point the court to page 2494 of the record. Now, admittedly, that is testimony by Rosen in the second administrative appeal, but it's the same procedure as the first one. And there, appellant's counsel was insistent on developing a record of at what point does Rosen's say on disciplinary matters end. And in that at that page, you'll see that Rosen testified, quote, the arbitrator has the final say, end quote. And so that shows that he'd be bound by the judgment of the arbitrator, but it also shows to rebut what appellant argued below, it's different than a Monell analysis, because it's the fact that he does not that Rosen does not have final say that makes him not the final policymaking authority. And so it's improper to draw a dotted line between Federal Monell liability standards and California preclusion privity standards, just like it's inappropriate to draw a dotted line without authority between California preclusion principles on one hand and Federal common law judicial estoppel. And so in light of those authorities and what's in the record, we would submit that the court can reach that if it needs to. But, again, we don't think the court needs to affirm.  Okay. Any follow-ups there, Judge Thomas? No, that's it. Thank you. Okay. Thank you, Mr. Brandenburg. Mr. Sarna. Your rebuttal, Mr. Chung. When we look at the record and look at what the arbitrator actually decided everything on, it's beyond a reasonable doubt. I did not have a full and fair opportunity to litigate the harms that I alleged in my Federal complaint. So many times throughout his arbitration decision, arbitrator Cohn specifically says, on this record, given this particular record, given this record, the reason why he says it is blatantly obvious from his 11-line footnote that you just cannot ignore. He says this was informal, no discovery, barely any rules of evidence. The court and the arbitrator serve completely different functions with the arbitrator deciding the just cause analysis, and the court will determine what, if any, weight to give to his decision. Mr. Chung, what's your response to your friend's reference to Paragraph 37, 38 of the complaint, where it seems like you are framing your complaint against Mr. Rosen as a supervision claim that would be, perhaps, derivative of the claim that was arbitrated? Well, I think this ultimately goes back to our discussion of primary rights. And the reason why I put in my reply brief that framing is so important is that if you broaden the scope out large enough, you could say anything falls within this primary right. Is it just the harm of anything bad that is done to you? Under that umbrella, everything can fit under that. And so every action that was, quote, unquote, bad would be precluded. But that's not how we should look at primary rights. And the Ninth Circuit has been very careful that we should not wield a brush that is too broad like that. And I think the carve-outs that I provided through Blackstone provide a good framework for us to think about it. Does this affect personal security? Does this affect personal liberty? Does this affect private property? At the end of the day, Arbitrator Cohn, he could not even arrive at the conclusion that there was just cause for a 10-day suspension. In fact, he reduced the suspension and said that only five days were worth it based on this record that he heard. He repeatedly made these sort of disclaimers saying, this is not court. This is just a labor arbitration. I'll hear whatever I want to hear. I know a thing or two about the First Amendment. This would be akin to a judge making a preclusive motion in limine, then saying, I'm going to rely on my own knowledge and expertise about the First Amendment. You don't get to put on evidence rebutting or putting on the factors for pickering, the three specific factors that I would be allowed to go through normally, and then at the end say, oh, you weren't speaking as a private employee on this record, and then telling the federal court, do what you may with this. Mr. Chung, you're over time, so I'll ask my colleagues if they have any other questions for you. Okay. We thank you. We thank both counsel for your arguments this morning. Thank you, Your Honors. And the court will be in recess.
judges: THOMAS, JOHNSTONE, Simon